**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KAREN CLOSKEY,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**GUTTER NATION, LLC,**<br><br>**FIRM FOUNDATIONS MARKETING LLC,**<br><br>**AND**<br><br>**OSAGIE NORUWA**<br><br>*Defendant.* | Case No. 2:25-cv-6483<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

Plaintiff Karen Closkey ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendants Gutter Nation, LLC ("Gutter Nation"), Osagie Noruwa ("Noruwa"), and Firm Foundations Marketing LLC ("Firm Foundations Marketing") (collectively, "Defendants") and alleges as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from

telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Defendants violated the TCPA by making telemarketing calls, including text message calls, to Plaintiff and other putative class members listed on the National Do Not Call Registry.

## PARTIES

4. Plaintiff Karen Closkey is an individual residing in Delaware County.

5. Defendant Gutter Nation, LLC is a limited liability company.

6. Defendant Firm Foundations Marketing LLC is a New York limited liability company

7. Defendant Osagie Noruwa is an individual residing in New York.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

9. This Court has specific personal jurisdiction over Defendants because it sent the calls into Pennsylvania, including to phone numbers with a 484- area code.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the acts giving rise to the complaint, namely, the illegal telemarketing conduct, took place in this District because the calls, including text message calls, were sent into this District to a 484- area code number.

## BACKGROUND

11. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

12. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

13. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

14. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## **FACTUAL ALLEGATIONS**

15. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

16. At no point did the Plaintiff consent to receiving telemarketing calls, including text message calls, from any Defendant prior to receiving the calls at issue.

17. Plaintiff's telephone number, (484) XXX-XXXX, is a residential, non-commercial telephone number.

18. Plaintiff uses the number for personal, residential, and household reasons.

19. The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

20. Moreover, the telephone line is assigned to a cellular service which is presumptively residential and was eligible for registration on the National Do Not Call Registry at the time it was registered.

21. Plaintiff's telephone number has been listed on the National Do Not Call Registry since April of 2025.

22. Plaintiff has never been a customer of any Defendant.

23. Despite that fact, the Plaintiff received at least two telemarketing text message calls in October 2025 that were sent using a telephone number personally purchased and registered by Defendants Noruwa and Firm Foundations, as alleged further below.

24. The Plaintiff received multiple unsolicited text messages from telephone number (541) 645-6606.

25. The messages were sent by "Gutter Nation," advertising gutter installation, replacement, and inspection services.

26. The first message stated: "Hi Karen, it's Ava with Gutter Nation. We're in Springfield this week doing free estimates for gutter replacement want me to stop by?"

27. The second message, sent the following day, stated: "Hey just checking in, would you like me to stop by for your free gutter check before fall leaves pile up?"

28. These message calls were sent for the purpose of encouraging the purchase of goods or services, and thus constitute "telemarketing" and "telephone solicitations" as defined by 47 C.F.R. § 64.1200(f)(12) and (13).

29. The calls were part of a marketing campaign promoting Gutter Nation's services in a geographic area (Springfield, Delaware County), consistent with mass telemarketing operations.

30. The messages were generic in content, failed to identify a physical business address or a means of opting out, and contained phrasing typical of a mass-produced telemarketing script rather than a personal communication.

31. There was nothing "free" about the offerings in the text messages.

32. The messages expressly offered to send a representative "to stop by" the Plaintiff's residence to provide "free estimates for gutter replacement" and a "free gutter check before fall leaves pile up."

33. The reference to "gutter replacement" makes clear that the purpose of the messages was to encourage the purchase of paid gutter services, including installation and replacement.

34. The use of the term "free" in the messages was a marketing technique intended to induce recipients to agree to an in-person sales visit.

35. Gutter Nation's website invites consumers to schedule appointments and obtain price estimates and prominently advertises its commercial services.

36. Thus, the "free estimate" or "free inspection" offered in the text messages served as a lead-generation tool to solicit business for Gutter Nation's paid services.

37. After receiving the second message, the Plaintiff responded: "How did you get this number?" and "I am on the 'Do Not Call' List. Please stop texting me. Thank you."

38. Under the TCPA, as confirmed by the Supreme Court, text messages are "calls" for the purposes of the TCPA. Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 153 (2016).

39. Following commencement of this action, Plaintiff served a subpoena pursuant to Federal Rule of Civil Procedure 45 upon Signal House, the telephone provider for the number at issue, seeking documents identifying the entity or individual to which telephone number (541) 645-6606 was assigned from January 2023 through the present, including the entity's or individual's name, physical address, e-mail address, and telephone number, and the time frame during which the number was assigned.

40. Signal House advised that telephone number (541) 645-6606 was purchased on July 8, 2025, by an individual identified as Osagie Noruwa, using the email address firmfoundationsmarketing1@gmail.com and a cell phone number of (347) 751-7940.

41. Signal House further identified the billing address registered to Noruwa's account as 26 Clyde Place, Staten Island, New York, and identified the business associated with the account as "Firm Foundations Marketing."

42. Signal House further indicated, upon information and belief, that the number "belonged to a customer of his," consistent with Noruwa's and Firm Foundations Marketing's business of providing marketing and telemarketing services to paying clients, including Gutter Nation.

43. Noruwa personally purchased and registered the telephone number that was used to send the unlawful text messages to Plaintiff.

44. Upon information and belief, Noruwa personally directs, controls, and/or participates in its marketing operations, including the text message campaigns it conducts on behalf of Firm Foundations Marketing's clients, like Gutter Nation.

45. The text messages sent to Plaintiff from (541) 645-6606 identified the sender as "Ava" with "Gutter Nation" and advertised Gutter Nation's gutter installation, replacement, and inspection services, demonstrating that the text message campaign conducted using the telephone number personally purchased and registered by Noruwa was undertaken to generate business for Gutter Nation at Gutter Nation's request.

46. Upon information and belief, Gutter Nation hired Noruwa and/or Firm Foundations Marketing to conduct a telemarketing text message campaign, including the text messages sent to Plaintiff, for the purpose of generating sales leads and soliciting business for Gutter Nation.

47. Firm Foundations Marketing is therefore directly liable under the TCPA as the entity that initiated, or caused to be initiated, the text message calls to Plaintiff and the Class.

48. Noruwa is directly and personally liable under the TCPA because he personally purchased and registered the telephone number used to transmit the unlawful text messages, personally controls the marketing operations of Firm Foundations Marketing as its owner and/or principal, and personally directed, authorized, participated in, and/or ratified the sending of the text messages at issue.

49. Defendant Noruwa may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added).

50. At all relevant times, Noruwa and Firm Foundations Marketing were the "users" of the telephone and/or text messaging platform used to send the calls at issue, and acted by and on behalf of themselves and Gutter Nation.

51. Furthermore, in 2013 the FCC held that a corporation or other entity that contracts out its telephone marketing may be held vicariously liable under federal common law principles

of agency for violations of section 227(b) or section 227(c) that are committed by third-party telemarketers hired to solicit business on its behalf. *In re DISH Network, LLC*, 28 FCC Rcd. 6574 ¶ 1 (2013).

52. Upon information and belief, Gutter Nation authorized, directed, and/or ratified the text message campaign conducted by Noruwa and Firm Foundations Marketing by accepting the benefit of the leads and business generated by that campaign, and by permitting Noruwa and Firm Foundations Marketing to identify themselves as "Gutter Nation," and as "Ava" purportedly of Gutter Nation, in communications with prospective customers such as Plaintiff.

53. Upon information and belief, Gutter Nation had the authority and practical ability to control, direct, supervise, and terminate its relationship with Noruwa and Firm Foundations Marketing, including with respect to the content, method, manner, and recipients of the text message campaign conducted on its behalf.

54. Under principles of actual authority, apparent authority, and ratification, Gutter Nation is vicariously liable for the unlawful text message calls placed by Noruwa and Firm Foundations Marketing on its behalf.

55. In sum, Noruwa and Firm Foundations Marketing are directly liable under the TCPA as the individual and entity, respectively, that purchased, registered, and used the telephone number to send the unlawful text messages at issue, and Gutter Nation is vicariously liable for having hired Noruwa and Firm Foundations Marketing to conduct the telemarketing campaign on its behalf, and for accepting and benefiting from the leads generated by that unlawful campaign.

56. The calls were unwanted.

57. The calls were nonconsensual encounters.

58. Plaintiff's privacy has been repeatedly violated by the above-described telemarketing calls.

59. Plaintiff never provided her consent or requested the calls.

60. Plaintiff and the Class have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

61. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

62. Plaintiff brings this action on behalf of herself and the following Class (the "Class") pursuant to Federal Rule of Civil Procedure 23.

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message from or on behalf of Defendants encouraging the purchase of Defendants' goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

63. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendants' records, or those of their agents.

64. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendants' telemarketing calls and Class members sustained similar injuries and damages as a result of Defendants' uniform illegal conduct.

65. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Class, and Defendants have no defenses unique to Plaintiff.

66. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

a. Whether Defendants obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

b. Whether Defendants should be held liable for violations committed on its behalf; and

c. Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

d. Whether Defendant Gutter Nation is vicariously liable for calls placed by telemarketing vendors, including Firm Foundations Marketing and Osagie Noruwa.

e. Whether Firm Foundations Marketing and Osagie Noruwa initiated the

calls at issue to numbers registered on the National Do Not Call Registry.

67. **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members in each class, such that joinder of all members is impracticable.

68. In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendants;

b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members who are not made parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c. Defendants have acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Class as a whole; and

d. Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the National DNC Class)**

69. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

70. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

71. Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

72. These violations were willful or knowing.

73. As a result of the violations of the TCPA's do not call rule by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

74. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully request that the Court enter judgment against Defendants for:

A. Certification of the Class as alleged herein;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned as counsel for the Class;

D. Damages to Plaintiff and members of the Class pursuant to 47 U.S.C. § 227(c)(5);

E. Injunctive relief for Plaintiff and members of the Class, pursuant to 47 U.S.C. § 227(c)(5), preventing the Defendants from making calls to numbers listed on the National Do Not Call Registry, to those who have asked them to stop, or while failing to transmit the caller ID information required by law;

F. Attorneys' fees and costs, as permitted by law; and

G. Such other or further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 10th day of September, 2026.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
PA Bar #333687
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com